(No. 75793.—

LINDA ZIMMERMAN, Appellee, v. BUCHHEIT OF SPARTA, INC., Appellant.

*Opinion filed November 23, 1994.—Rehearing denied January 30, 1995.*

30

BILANDIC, C.J., joined by HEIPLE, J., concurring.
HARRISON, J., joined by NICKELS, J., dissenting.

David R. Smith, of Nehrt, Sachtleben, Fisher, Smith & Kerkhover Law Offices, of Chester, and John W. Grimm, of Limbaugh, Russell, Payne & Howard, of Cape Girardeau, Missouri, for appellant.

Harriet H. Hamilton, of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

JUSTICE McMORROW delivered the judgment of the court:

In this appeal we are called upon to determine whether a cause of action should be recognized which is predicated on an employer's alleged retaliation against an employee who is not discharged from employment but rather is allegedly demoted or discriminated against for asserting employee rights under the Workers' Compensation Act.

Plaintiff, Linda Zimmerman, an at-will employee, filed a two-count complaint against defendant, Buchheit of Sparta, Inc., plaintiff's employer, claiming that defendant "demoted and discriminated against" her "by reason of her assertion of her rights under the Illinois Worker's Compensation Act." The circuit court granted defendant's motion to dismiss for failure to state a cause of action; the appellate court reversed and remanded the cause for further proceedings. (245 Ill. App. 3d 679.) On appeal to this court, defendant contends that Illinois law does not recognize a cause of action based on retaliatory discrimination or demotion and that plaintiff's complaint was both legally and factually insufficient.

The operative portions of plaintiff's first amended complaint state as follows:

"2. That on or about December 30, 1990, [plaintiff] was an employee of [defendant] and then and there sustained injuries arising out of and in the course of her employment with [defendant].

3. That thereafter, [plaintiff] *** notified [defendant] of her intention to assert her rights pursuant to the Illinois Worker's Compensation Act.

4. That [defendant], on or about April 19, 1991, demoted and discriminated against [plaintiff], by reason of her assertion of her rights under the Illinois Worker's Compensation Act.

5. That as a direct and proximate result of the wrongful acts of [defendant], [plaintiff] has sustained injuries by her loss of income and benefits, she has sustained injuries to her reputation, and has sustained mental anguish, all to her damage in a substantial amount."

The other count of plaintiff's complaint is virtually identical to the first, except for the addition of the following paragraph:

"That the demotion and discrimination by [defendant] was wrongful and oppressive, and wilful and wanton, and in retaliation for the exercise by [plaintiff] of her legal rights pursuant to the Illinois Worker's Compensation Act, and was in violation of Section 4(h)."

Defendant argues primarily that the appellate court erred in expanding the tort of retaliatory discharge beyond its clear boundaries. Plaintiff, although conceding she does not state a cause of action for retaliatory *discharge*, nonetheless argues that "if the essential doctrine of *Kelsay v. Motorola* [(1978), 74 Ill. 2d 172] is to be implemented, there must be some comparable doctrine, to protect employees from other distinct measures of retaliation, short of an actual discharge." According to plaintiff, such a comparable doctrine in the instant case would preclude an employer's "retaliatory demotion" or "retaliatory discrimination" against an employee for asserting rights under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*).

At common law and in Illinois today, a noncontracted employee is one who serves at the employer's will, and the employer may discharge such an employee for any reason or no reason. (*E.g., Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142.) In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, for reasons of public policy, a limitation on the employer's ability to freely discharge an at-will employee was created. In *Kelsay*, 74 Ill. 2d at 180, this court considered the "new system of rights, remedies, and procedure" created by the Workers'

Compensation Act, and observed that in exchange for the rights and benefits conferred on employees in the Act's statutory scheme of no-fault liability, employees gave up their common law rights to sue their employer in tort for their work-related injuries and employers gave up common law defenses. The court found that "[t]his tradeoff between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay*, 74 Ill. 2d at 180-81.

The plaintiff in *Kelsay* filed suit upon being discharged for pursuing her claim for workers' compensation, after being warned that it was corporate policy to discharge employees who brought such claims against the company. The employer argued that plaintiff's action for retaliatory discharge was barred by the exclusivity provision of the Act, section 11, which provides that the compensation and other provisions of the Act " 'shall be the measure of the responsibility' " of the employer. (*Kelsay*, 74 Ill. 2d at 184, quoting Ill. Rev. Stat. 1973, ch. 48, par. 138.11.) The court held that section 11 did not preclude the plaintiff from maintaining an independent tort action for retaliatory discharge because the exclusivity provision was designed to "limit recovery by employees to the extent provided by the Act in regard to work-related injuries." (*Kelsay*, 74 Ill. 2d at 184.) Without a remedy for retaliatory discharge, employees would be placed in the position of "choosing between their jobs and seeking their remedies under the Act." (*Kelsay*, 74 Ill. 2d at 184.) Therefore, to uphold and implement the fundamental purpose and public policy behind the Act, the *Kelsay* court determined it was necessary to recognize a cause of action for retaliatory discharge. *Kelsay*, 74 Ill. 2d at 181.

The *Kelsay* court rejected the employer's argument that the legislature did not intend for a civil remedy for retaliatory discharge to be available because the Act did not provide for such remedy. The court cited to section 4(h) of the Act and stated that "where a statute is enacted for the benefit of a particular class of individuals a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically mentioned." *Kelsay,* 74 Ill. 2d at 185.

Section 4(h) of the Act, in its entirety, states as follows:

"It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." Ill. Rev. Stat. 1991, ch. 48, par. 138.4(h).

In recognizing an independent tort action for retaliatory discharge, the court in *Kelsay* relied in part on the second paragraph of section 4(h), which makes unlawful an employer's *discharge* of an employee for asserting his or her rights under the Act. In contrast, the appellate court in the case at bar relied on language contained in the first paragraph of section 4(h), which prohibits an employer from *discriminating* against an employee who exercises his or her rights under the Act. It should be noted that nothing in section 4(h) expressly provides a remedy for an employee or imposes a sanction

upon an employer in the event that the terms of section 4(h) are violated.[1]

Both parties to this appeal focus on the principles underlying the well-developed theory of retaliatory discharge. Accordingly, we first examine the doctrine of retaliatory discharge, and we then consider whether section 4(h) supports the implication of a cause of action for employees who allege that they have been demoted in retaliation for asserting their rights under the Act.

Following recognition of the tort of retaliatory discharge in *Kelsay*, this court has held that "[a] plaintiff states a valid claim for retaliatory discharge only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, citing *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520.) In the instant case, plaintiff fails to satisfy the first element and she concedes in her brief that "obviously plaintiff does not have a claim of retaliatory discharge." Plaintiff asserts, nonetheless, that this court should implement a "comparable doctrine" of retaliatory discrimination or demotion, to protect employees from employer retaliation that falls short of actual discharge. Plaintiff admits that the case law has not extended the existing doctrine

---

[1]However, two other subsections of section 4 impose express sanctions on employers for certain conduct. Section 4(d) provides for the imposition of a civil penalty of $500 per day if an employer fails to comply with the requirement of obtaining insurance coverage for his employees and section 4(g) subjects an employer to liability for a Class B misdemeanor for passing on the costs of the insurance premiums to the employees. (Ill. Rev. Stat. 1991, ch. 48, pars. 138.4(d), (g).) See also section 26 of the Act, which provides that "[a]ny wilful neglect, refusal or failure to do the things required to be done by any section, clause or provision of this Act *** is a petty offense." Ill. Rev. Stat. 1991, ch. 48, par. 138.26.

to include actions based on an employer's *constructive* discharge of an employee.

In *Hinthorn,* the injured plaintiff was forced to sign a "voluntary resignation" form after she sought medical attention for a back injury she received on the job, the third injury she had sustained at work. Plaintiff had filed workers' compensation claims for the other two injuries. The defendant's vice-president met with plaintiff the day she sought medical attention for her back injury and told her she was costing the company too much money. She was told to sign the resignation form, which would let her leave "under her own free will." She understood she would lose her job if she did not sign. In holding that plaintiff stated a cause of action for retaliatory discharge, this court stated:

> "We agree that plaintiff has sufficiently alleged that she was discharged, but wish to make abundantly clear that we are not now endorsing the constructive discharge concept rejected by the appellate court in *Scheller [v. Health Care Service Corp.* (1985), 138 Ill. App. 3d 219]." (*Hinthorn,* 119 Ill. 2d at 530-31.)

In *Scheller,* the appellate court rejected a formulation of constructive discharge that was based on " 'whether the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign.' " (*Scheller,* 138 Ill. App. 3d at 224, quoting *Beye v. Bureau of National Affairs* (1984), 59 Md. App. 642, 653, 477 A.2d 1197, 1203. See also *Barr v. Kelso-Burnett* (1985), 106 Ill. 2d 520, 525 (where this court clarified that its previous decisions had not " 'rejected a narrow interpretation of the retaliatory discharge tort' " and did "not 'strongly support' the expansion of the tort").

In *Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, this court reviewed the propriety of the trial court's entry of a preliminary injunction that prevented an

employer from discharging an injured employee. Following a period in excess of two years during which the employer paid disability benefits and provided the employee with rehabilitation services, the employer encouraged the plaintiff to search for employment with other employers. Plaintiff then filed suit requesting an injunction to prevent his termination.

After reviewing the law of retaliatory discharge and the elements of an injunction, the *Hartlein* court reversed the trial court's order granting plaintiff's petition for preliminary injunctive relief. The court acknowledged the "revolutionizing effect of *Kelsay,*" but reiterated that Illinois retains the common law doctrine of at-will employment. The court stated:

> "Thus, Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position [citation]; nor is an employer obligated to reassign such an employee to another position rather than terminate the employment [citation]. Similarly, an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury. [Citation.]" *Hartlein,* 151 Ill. 2d at 159-60.

Although the plaintiff in *Hartlein* argued that his employer's request for him to contact other potential employers should be construed as a threatened discharge, and therefore actionable, this court held that the facts did not support the plaintiff's theory that he had been effectively terminated or was in the "process" of being discharged in retaliation for his assertion of rights under the Act. The *Hartlein* court held, "[W]ith regard to the fact of discharge, we decline to expand the tort to encompass a retaliatory discharge 'process' as alleged by Hartlein." *Hartlein,* 151 Ill. 2d at 161.

In *Hinthorn, Barr,* and *Hartlein,* this court expressed its disinclination to expand the tort of retaliatory discharge. Appellate court decisions similarly have followed a narrow interpretation of the cause of action. *E.g.,*

*Scheller*, 138 Ill. App. 3d 219 (rejecting constructive discharge concept); *Dudycz v. City of Chicago* (1990), 206 Ill. App. 3d 128; see also *Melton v. Central Illinois Public Service Co.* (1991), 220 Ill. App. 3d 1052, 1056 (rejecting plaintiff's claim that "a threat to discharge or discipline short of discharge" stated a valid cause of action).

In *Hindo v. University of Health Sciences/Chicago Medical School* (1992), 237 Ill. App. 3d 453, 460, the court expressly rejected retaliatory demotion as a cause of action. The plaintiff sought relief after he was demoted from his position as chairman of the department of radiology allegedly in retaliation for exposing a scheme involving falsified time cards. The *Hindo* court observed:

> "Illinois courts do not recognize a cause of action for retaliatory demotion. (See *Ludwig v. C&A Wallcoverings, Inc.* (N.D. Ill. 1990), 750 F. Supp. 339 (where the district court found that Illinois courts follow a narrow interpretation of retaliatory discharge and have not yet recognized a cause of action for retaliatory demotion; thus, the district court would not extend State law to create a cause of action for retaliatory demotion).) Retaliatory discharge is considered a limited and narrow exception to the general rule of at-will employment. (See *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 501.) *** We decline to extend it further." *Hindo*, 237 Ill. App. 3d at 460.

See also *Bush v. Commonwealth Edison Co.* (N.D. 1991), 778 F. Supp. 1436, 1447-48 (where the court granted summary judgment to an employer on the plaintiff's complaint for retaliatory demotion or failure to promote, holding that "Illinois courts have not recognized a common law or statutory cause of action for retaliatory demotion or failure to promote").

As demonstrated by the decisional law of this State, the element of discharge in violation of a clear public policy is essential to the tort created by this court in *Kelsay*. In the instant case we are asked to extend the

existing law to circumstances in which an employee suffers a loss of employment status or income or both, but is not terminated from her employment altogether. Such an expansion of current law would be significant, given the consistent refusal of the courts of this State to dilute the discharge requirement. We note that Illinois courts have refused to accept a "constructive discharge" concept. *E.g., Hinthorn,* 119 Ill. 2d 526; *Scheller,* 138 Ill. App. 3d 219; *Dudycz,* 206 Ill. App. 3d 128.

We decline plaintiff's request to extrapolate from the rationale of *Kelsay* a cause of action predicated on retaliatory demotion. *Kelsay* created an exception to the employment-at-will doctrine. In our view, adoption of plaintiff's argument would replace the well-developed element of discharge with a new, ill-defined, and potentially all-encompassing concept of retaliatory conduct or discrimination. The courts then would be called upon to become increasingly involved in the resolution of workplace disputes which center on employer conduct that heretofore has not been actionable at common law or by statute. Although the term "demotion" may appear amenable to clear definition, many questions arise: Is a demotion in title or status, but not salary, actionable? Could a transfer from one department to another be considered a demotion? Would it be fair to characterize as a demotion a significant increase in an employee's duties without an increase in salary? It is plaintiff's burden, in urging this court to create new rights of action or expand existing ones, to persuade the court of the need for such new or expanded rights.

In the instant case, plaintiff recites general principles of policy, found in *Kelsay,* but fails to establish a compelling reason for expanding judicial oversight of the workplace to include review of demotions, transfers, or other adverse work conditions that are alleged to be retaliatory in nature. Plaintiff argues that if this court

accepts defendant's "narrow" interpretation of the doctrine first enunciated in *Kelsay*, "an employer could take extraordinary measures, e.g., demote a Vice President to a stock person, or reduce an employee's hours from 40 per week to 1 hour per week, with complete immunity from the civil justice system." We note that plaintiff's complaint offers no facts remotely comparable to her hypothetical examples. Indeed, plaintiff's complaint lacks specificity with respect to the circumstances of her employer's alleged discrimination and her resulting legal injury.

Litigants, particularly those who seek the creation of new forms of relief, must provide sufficient facts to enable a court to fully discern the nature of the harm alleged and sought to be redressed. (See *Dudycz*, 206 Ill. App. 3d at 134 ("[E]ven if the concept of constructive discharge were recognized in Illinois within the context of a common-law tort of retaliatory discharge, plaintiff failed to set forth facts to establish a constructive discharge").) In the case at bar, plaintiff relies on conclusory statements that she "sustained injuries" while employed by defendant, notified defendant of her intention to "assert her rights" under the Act, and that, subsequently, defendant "demoted and discriminated against" plaintiff "by reason of her assertion of her rights" under the Act. She alleges that as a direct and proximate cause of defendant's unspecified conduct, she was injured in "her reputation, and has sustained mental anguish" and a "loss of income and benefits." Plaintiff seeks compensatory and punitive damages.

Having declined to expand existing doctrine in the manner suggested in the instant case, we now address the distinct but interrelated ground on which the appellate court premised its ruling: the implication of a private right of action pursuant to section 4(h) of the Act.

The appellate court reasoned that section 4(h) of the Act supports implication of a *statutory* remedy for persons in plaintiff's position, who allege discriminatory treatment arising out of their pursuit of claims for workers' compensation. Such remedy is premised on that language of section 4(h) which makes it unlawful for employers to "discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act." (Ill. Rev. Stat. 1991, ch. 48, par. 138.4(h).) The appellate court held that plaintiff had alleged a loss of income and reduction of hours because of her demotion and, if such allegations were taken as true, the employer had discriminated against plaintiff in violation of section 4(h):

> "Under these circumstances, a cause of action could lie to ensure that the public policy behind the enactment of the Workers' Compensation Act is not frustrated. It would be a bitter irony if employers were allowed to circumvent the public policy recognized by the supreme court in *Kelsay* and adopted by the legislature by section 4(h) by performing retaliatory and 'discriminatory' actions short of termination. Public policy will not allow employers to frustrate an employee's rights under the Workers' Compensation Act and to avoid statutorily imposed duties by retaining the employee but demoting or reducing the employee's hours." 245 Ill. App. 3d at 683.

The appellate court's approval of an action for retaliatory conduct short of termination is inherently inconsistent with the rationale of those cases which have disapproved the imposition of liability where the employee is not actually discharged or forced to resign. (*E.g.*, *Hinthorn*, 119 Ill. 2d 526; *Hartlein*, 151 Ill. 2d 142; *Scheller*, 138 Ill. App. 3d 219; *Dudycz*, 206 Ill. App. 3d 128; *Melton*, 220 Ill. App. 3d 1052; *Hindo*, 237 Ill. App. 3d 453; *Bush*, 778 F. Supp. 1436.) Apart from citation to *Kelsay*, the appellate court did not cite authorities to justify the implication of a section 4(h) cause of action

for employer "discrimination" or demotion based on an employee's assertion of rights under the Workers' Compensation Act. Plaintiff presents no analysis of this section beyond her apparent belief that her demotion or reduction in work hours, occasioned by her assertion of statutory rights, should be actionable pursuant to section 4(h).

Our research has revealed a number of cases in which Illinois courts have considered whether the terms of section 4(h) of the Act support the implication of a statutory right of action for retaliatory conduct apart from actual discharge of the employee. See *Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913 (plaintiff who was reassigned to a position at half his salary failed to state cause of action for violation of section 4(h) because he was not discharged); *Bragado v. Cherry Electrical Products Corp.* (1989), 191 Ill. App. 3d 136 (plaintiff's claim for wrongful termination of temporary total disability benefits was a matter for the Industrial Commission and not the basis for an action pursuant to section 4(h)); *Cook v. Optimum/ Ideal Managers Inc.* (1984), 130 Ill. App. 3d 180 (holding that court would not imply a statutory cause of action for employer's "interference" in employee's assertion of claim for compensation); *Miranda v. Jewel Cos.* (1989), 192 Ill. App. 3d 586. *Cf. Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 175 (where the court held that a seasonal employee, a roofer, could maintain an action for his employer's retaliatory "refusal to rehire" him, noting that the same provision of the Act which makes unlawful an employer's discharge of an employee for asserting his rights under the Act also prohibits employers from "refus[ing] to rehire or recall to active service" an employee for exercising his rights under the Act).

In *Cook v. Optimum/ Ideal Managers Inc.*, an injured

employee attempted to maintain a cause of action, pursuant to section 4(h) of the Act, for his employer's alleged retaliatory conduct. Specifically, the plaintiff relied on the provision of section 4(h) that makes unlawful an employer's "interference" with an employee's assertion of rights under the Act. The plaintiff in *Cook* argued that his employer wrongfully terminated the plaintiff's workers' compensation payments and refused to furnish copies of the medical reports pertaining to his injuries, thereby thwarting the plaintiff's ability to assert his rights under the Act.

Although the court in *Cook* found that the employer's interference with plaintiff's rights under the Act was contrary to the public policy expressed in section 4(h), the court stated, "The need under the statute for civil actions like the one brought by Cook is anything but clear." (*Cook*, 130 Ill. App. 3d at 186.) The court noted that various provisions of the Act provided remedies to employees whose compensation for injuries was unreasonably delayed or withheld by the employer. A specific provision of the Act allowed an employee to compel production of medical reports in the proceedings before the Industrial Commission. The *Cook* court concluded that the Act's provisions were the exclusive remedies for the employee's alleged economic losses and delays in payment for work-related injuries. Consequently, the court determined that implication of a cause of action from section 4(h) of the Act under the circumstances before the court was not justified: "Unlike retaliatory discharge, the alleged misconduct on the part of the insurance adjuster in this case would not 'effectively [relieve] the employer of the responsibility expressly placed upon him by the legislature ***.' [Citation.]" *Cook*, 130 Ill. App. 3d at 187.

Section 4(h) of the Act, in our view, does not support the implication of a cause of action based solely on

plaintiff's argument that her demotion may be viewed as defendant's "discrimination" against her for asserting rights under the Act. The motivating factor in *Kelsay* for creating an independent tort action for retaliatory discharge was the express corporate policy of the employer in that case to discharge employees who filed workers' compensation claims; allowing the continuation of such a policy would frustrate the strong public policy expressed in the Act—the prompt compensation of employees for their injuries. In the instant case, plaintiff fails to explain the manner in which demotions, as distinct from terminations, relieve employers of their responsibility to compensate employees for their work-related injuries. We conclude that plaintiff has not established in her pleadings or arguments that section 4(h) of the Act supports, by implication, a cause of action for retaliatory demotion or discrimination.

The legislature can expressly amend the Act if it determines that a damages remedy should be available for persons who claim a diminution of their employment based on a theory of retaliatory conduct. Accordingly, with the recognition that the creation of new rights under the Act is properly a matter within the wisdom of the General Assembly, and in the interest of judicial restraint, we decline plaintiff's invitation to judicially create a cause of action for retaliatory demotion. Plaintiff has not presented this court with a compelling showing of the necessity to create such a cause of action. In light of the declination of the legislature and this court to adopt a legally enforceable tort of retaliatory demotion, it is unnecessary to reach the issues concerning the factual sufficiency of plaintiff's complaint.

The Workers' Compensation Act reflects the legislative balancing of rights, remedies, and procedures that govern the disposition of employees' work-related injuries. This balance should not be lightly disturbed

through the judicial creation of new causes of action, implied from the terms of particular provisions of the Act, unless a compelling case can be made for their necessity.

The dissenting justices urge expansion of *Kelsay* to recognize a cause of action for retaliatory demotion; the concurring justices propose overruling *Kelsay* to eliminate the tort of retaliatory discharge altogether. These polar opposite views take an all-or-nothing approach to the issue presented in the case at bar, apparently in the belief that the sole relevant authority for deciding this case is *Kelsay*. Neither the dissent nor the concurrence makes reference to the long line of cases, cited in this opinion, which trace the guarded development and narrow construction of the tort of retaliatory discharge. Nor do the dissenting and concurring justices consider the cases that have addressed, and rejected, proposed theories of retaliatory conduct resulting in something other than discharge. The concurrence mistakenly assumes that the common law tort of retaliatory discharge is solely a statutory cause of action implied from section 4(h) of the Workers' Compensation Act. In light of that assumption, and perhaps in furtherance of a concern for symmetry in the law, the concurrence agrees with the dissent that there is no basis on which to distinguish retaliatory discharge from retaliatory demotion. The concurrence relies almost entirely on the reasoning of the sole dissenting justice in *Kelsay* and concludes that retaliatory discharge should never have been recognized, and that this court should therefore "repudiate" *Kelsay*, an issue that was not presented to this court in the case at bar. Neither the dissent nor the concurrence acknowledges that this court acts within its authority in reaffirming the well-settled and limited tort of retaliatory discharge, as an exception to the at-will employment doctrine, without being constrained to open

broad new avenues of litigation for other, less defined types of retaliatory conduct in the workplace.

The judgment of the appellate court is reversed; the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE BILANDIC, concurring:

The plurality does not create a cause of action for retaliatory demotion but continues to recognize a cause of action for retaliatory discharge. The plurality's reasoning is flawed because, if we do not have a cause of action for retaliatory demotion, we, in effect, will not have a cause of action for retaliatory discharge. We have invited those who wish to discharge in retaliation to simply demote in retaliation, and thereby escape the effect of the law. This glaring loophole will create more problems than it solves.

I agree with the plurality's conclusion that section 4(h) of the Workers' Compensation Act does not create an implied cause of action for retaliatory demotion. I also agree, however, with the dissenting justice's conclusion that recognition of a cause of action for retaliatory demotion is a logical and necessary extension of *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.

Under the circumstances, it is my judgment that the only reasonable explanation for the apparent inconsistency between the plurality decision and the *Kelsay* decision is an outright acknowledgment that the *Kelsay* court erred when it recognized an "implied" cause of action for retaliatory discharge. As Justice Underwood pointed out in his dissenting opinion in *Kelsay*, recognition of a cause of action for retaliatory discharge was clearly a matter for the legislature and not the courts. In *Kelsay*, the court made an unwarranted intrusion into the legislative arena and amended the Workers'

Compensation Act in a manner that the legislature had undoubtedly considered, but declined to adopt.

As Justice Underwood's dissent to *Kelsay* noted, the legislature amended the Workers' Compensation Act (Act) in 1975 to make it a *criminal* offense for an employer to threaten or effect a discharge in retaliation for an employee's exercise of his rights under the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.4(h)). In adopting this 1975 amendment, the members of the General Assembly undoubtedly thought they were creating a remedy for retaliatory discharge and established what they considered to be a sufficient deterrent, namely, criminal prosecution. The amendment did not create a *civil* remedy for discharged employees against their employers. As Justice Underwood pointed out, it was unrealistic to suppose that those who drafted, sponsored and adopted the 1975 amendment simply ignored the question of civil remedies. (*Kelsay*, 74 Ill. 2d at 193 (Underwood, J., concurring in part and dissenting in part).) On the contrary, had the legislature thought that recognition of a civil cause of action for retaliatory discharge was desirable or necessary to effectuate the policies underlying the Act, it would have included such a remedy within the statute. The *Kelsay* majority ignored this deliberate omission and found that the policy against retaliatory discharge could only be effectively implemented and enforced by allowing a civil remedy for damages. As the dissent aptly noted, however, the fact that the *Kelsay* majority was convinced that such a cause of action was necessary was irrelevant, since the legislature was not so convinced.

In this appeal, we are asked again to assume the role of a legislative body and to enact a new rule of law simply because the proponents of that rule are unable to secure its passage in the legislature. (See *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 38 (Ryan, J., dissenting).) The

plurality wisely exercises self-restraint and declines the invitation to create yet another "judge-made law." At the same time, the plurality decision is obviously inconsistent with the rationale adopted in *Kelsay*. The Act prohibits both discrimination against and the discharge of employees who exercise their rights under the Act. If, as the plurality holds, an implied civil remedy for retaliatory demotion is not necessary to effectuate that portion of the Act which prohibits *discrimination* against employees who seek workers' compensation benefits, why is an implied civil remedy necessary to effectuate that portion of the Act which prohibits employers from *discharging* employees who seek workers' compensation benefits?

Instead of acknowledging this inconsistency and repudiating *Kelsay*, the plurality makes an unconvincing and disingenuous attempt to distinguish the holding in that case. In my judgment, if we hold that there is no cause of action for retaliatory demotion, we should also recognize that the *Kelsay* court erred in creating an implied cause of action for retaliatory discharge. In both instances, the legislature is in a manifestly better position to determine whether such a cause of action is necessary, appropriate or desirable. Policy questions such as those involved here and in *Kelsay* are best left to the judgment of a General Assembly.

For the reasons stated above, I concur with the plurality's holding that there is no implied cause of action for retaliatory demotion under section 4(h) of the Workers' Compensation Act.

JUSTICE HEIPLE joins in this concurrence.

JUSTICE HARRISON, dissenting:

Although the plurality professes not to reach issues concerning the factual sufficiency of plaintiff's complaint (164 Ill. 2d at 44), it expressly holds that the com-

plaint is conclusory (164 Ill. 2d at 40) and lacks the requisite specificity (164 Ill. 2d at 40). This is not so. The Code of Civil Procedure provides,

"No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." (Ill. Rev. Stat. 1991, ch. 110, par. 2—612(b).)

Zimmerman's complaint plainly meets this test. It avers that she was demoted and discriminated against by her employer because she wanted to claim workers' compensation benefits for injuries she sustained in the course of her employment. The complaint specifies the date she sustained her injuries, and the date the employer took retaliatory action against her. The complaint further specifies how the retaliation affected her employment. Her income fell, and her benefits were reduced.

To allege an action for retaliatory demotion, that is all Zimmerman needed to plead. Although the precise nature of her demotion is not specified, it did not need to be. The salient point is that Zimmerman had her pay and benefits cut because she wanted to claim workers' compensation benefits. Whether the reductions were accompanied by a change in job title or responsibilities or whether they resulted from a simple reduction in the hours she was allowed to work is irrelevant. Such details would not alter the basic nature of Zimmerman's claim or affect her employer's ability to defend against it.

Even if greater specificity were required, that would not provide an independent basis for dismissing Zimmerman's complaint with prejudice. A cause of action should not be dismissed with prejudice on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.) This is not such a case. There is no reason to believe that Zimmerman could not provide copious additional details regarding the circumstances of her demotion and her employer's

discrimination against her if only she were given leave to amend her complaint.

The plurality may protest that Zimmerman did not in fact seek such leave from the circuit court. Although this is true, it is also true that she had no need to do so. In the proceedings before the circuit court, the details of Zimmerman's demotion and her resulting injury were not at issue. The dispute there turned solely on the narrow legal question of whether an employee has a cognizable claim under Illinois law where her employer demotes or discriminates against her based on her desire to claim workers' compensation benefits. To hold that Zimmerman should have looked beyond this and sought leave to amend even though no deficiency was raised would be manifestly unjust.

Even if the employer had challenged the sufficiency of the factual allegations in Zimmerman's complaint, the plurality's position would still fail. The question of whether a complaint absolutely fails to indicate any legally cognizable ground of liability can be raised at any time. Where, however, the complaint is claimed to be defective simply because its statement of a cause of action is incomplete or otherwise insufficient, the defects are subject to waiver. (*Wagner v. Kepler* (1951), 411 Ill. 368, 371.) Waiver will be found when a defendant answers the complaint without objection (see *Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 444), particularly if the defect could have been remedied by amendment (see *Meadows v. State Farm Mutual Automobile Insurance Co.* (1992), 237 Ill. App. 3d 240, 253).

These principles are applicable here. Although the plurality does not mention it, the record shows that the employer's motion to dismiss was not filed until after it had already obtained an order granting its motion to transfer, filed its answer and responded to discovery. In addition, as previously noted, there is no reason to doubt

that Zimmerman could have cured any insufficiency in her factual allegations had she known at the outset that she needed to. Once the employer proceeded past the pleading stage, the sufficiency of the factual allegations in Zimmerman's complaint was therefore no longer subject to challenge in a section 2—615 (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) motion. *Adcock v. Brakegate, Ltd.* (1994), 164 Ill. 2d 54.

The plurality's criticism of the allegations in the complaint enables the court to shift blame to Zimmerman for the harsh result it reaches today. This is wholly uncalled for. If the law commands a certain result, that is the result this court should reach. We do not also need to find personal fault with the parties or establish some shortcoming on the part of their attorneys in order to justify our position.

The plurality's criticism of Zimmerman's pleadings is also disconcerting because it is not necessary to the disposition. From consideration of the plurality's opinion as a whole, it is apparent that no set of facts would have persuaded the court to recognize her cause of action. No matter what Zimmerman may have pleaded, the plurality would have refused to allow her to proceed on a theory of retaliatory demotion.

The plurality's analysis conceptualizes retaliatory demotion as an expansion of the tort of retaliatory discharge, just as constructive discharge would be. Because no common law claim is allowed in constructive discharge situations, the plurality reasons that it would be inconsistent to allow a claim here. The basic flaw in this analysis is that the tort of retaliatory demotion is not a variant of retaliatory discharge, but rather a companion to it.

The case before us concerns adverse action taken against an employee who sought to assert her rights under the Workers' Compensation Act (Ill. Rev. Stat.

1991, ch. 48, par. 138.1 *et seq.*). In recognizing the tort of retaliatory discharge, this court relied, in part, on that portion of section 4(h) of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 138.4(h)) which makes it unlawful for an employer to discharge an employee who seeks to exercise his rights under the Act. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 182-85.) Discharge is not, however, the only prohibition contained in the statute. As the plurality here correctly points out, there is a parallel provision in section 4(h) which likewise makes it unlawful for an employer to discriminate against an employee who seeks to exercise his rights under the Act. Ill. Rev. Stat. 1991, ch. 48, par. 138.4(h).

Under the statute, these parallel provisions are of equal force. Accordingly, if the prohibition against discharge evinces a public policy whose violation can only be redressed through a civil action for damages, and we have clearly held that it does (*Kelsay*, 74 Ill. 2d at 185), how can we reach a different conclusion with respect to the prohibition against discrimination, which is the basis for Zimmerman's claim here? There is no principled way to distinguish the two situations. The "comprehensive scheme" enacted by the legislature "to provide for efficient and expeditious remedies for injured employees" (*Kelsay*, 74 Ill. 2d at 182) would be no less undermined if employers were permitted to discriminate against employees for seeking compensation under the Act than it would be if they were permitted to discharge such employees.

The plurality frets that it might be too hard for courts to decide when actionable discrimination has taken place. Such a concern scarcely merits comment. Courts in the United States are routinely called upon to pass on questions of workplace discrimination. (See, *e.g.*, 45A Am. Jur. 2d *Job Discrimination* § 1 *et seq.* (1993).) The task may not be an easy one, but it is surely no

more difficult than countless other issues that we, as judges, must resolve every day. I am confident that my colleagues on the bench would be able to meet the challenge.

In any event, whatever difficulties there might be with defining actionable discrimination, they do not exist in the particular case before us today. Unlike the examples given by the plurality (164 Ill. 2d at 39), Zimmerman does not allege that she was demoted only in the sense of suffering a loss of title or status or a transfer from one department to another. The demotion she alleges involved a loss of income and benefits. Injuries of that kind would clearly be subject to redress under any standard.

If situations should arise which are more ambiguous, we can deal with them on a case-by-case basis. The court's fear of uncertainties which are not yet realized is no reason to impose an absolute bar to recovery. Accordingly, I would affirm the judgment of the appellate court, reverse the judgment of the circuit court, and remand so that Zimmerman's cause of action could proceed beyond the pleadings stage. I therefore dissent.

JUSTICE NICKELS joins in this dissent.