54 F.3d 779
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Phillip BUTTON, Plaintiff-Appellant,
v.
Sandra KIBBY-BROWN and Steven L. McEvers, Defendants-Appellees.
 No. 94-2349.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 6, 1995.
Decided May 5, 1995.
 
 IN PART, VACATED IN PART, REMANDED.
 
 
 1
 Before CUMMINGS, and KANNE, Circuit Judges, and GRANT, District Judge*
 
 ORDER
 
 2
 Phillip Button brought a federal claim under 42 U.S.C. Sec. 1983 and a pendent Illinois state law tort claim. The district court dismissed both of Button's claims under Fed. R. Civ. P. 12(b)(6). Button appeals; we vacate the dismissal of his Sec. 1983 claim. We affirm the dismissal of the pendent state claim. We review a 12(b)(6) dismissal de novo. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994).
 
 
 3
 Button claims Kibby-Brown and McEvers violated his First Amendment right to free speech when they retaliated against him for his discussion with Deputy Director Brown. Button is a public employee; therefore the First Amendment only protects that speech of his which touches upon a matter of public concern. Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687 (1983); Wright v. Ill. Dept. of Children & Family Services, 40 F.3d 1492, 1500 (7th Cir. 1994). To decide whether particular speech involves a matter of public concern, we look at the content, form, and context of the speech, although content is the most important. Wright, 40 F.3d at 1501. Furthermore, if Button's speech did involve a matter of public concern, his interest in expressing himself must then be weighed against the state's interest in operating its public services. Pickering v. Board of Ed. of Township High School Dist., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35 (1968); Wright, 40 F.3d at 1500.
 
 
 4
 Rule 12(b)(6) dismissals should not be granted merely where a recovery appears unlikely. Rather, it must appear "beyond doubt that [the plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." Kolman v. Sheahan, 31 F.3d 429, 431 (7th Cir. 1994). For our review, we must accept all material allegations Button made as true, and we draw all reasonable inferences from Button's allegations in his favor. Id.
 
 
 5
 The Federal Rules set up a "notice pleading" system. All that the Rules require is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see Leatherman v. Tarrant County Narcotics Unit, U.S. , , 113 S.Ct. 1160, 1163 (1993) (emphasizing that the Rules only require particularity in pleading in connection with specified types of claims). While Button's complaint is ambiguous about precisely what matters the conversation is alleged to have covered, it adequately states a complaint upon which relief may be granted.
 
 
 6
 Button alleged that "[b]ecause he was concerned about the welfare of the Inmate and the breach of the agreement with Gateway regarding use of the educational materials, Button discussed the situation" with Deputy Director Brown. Button alleged that in that conversation he "expressed concern about Kibby-Brown's refusal to allow him to use the educational materials." He further alleged that the conversation was "about the treatment of the Inmate." Although this language is somewhat ambiguous, it is a reasonable inference that the content of Button's conversation with Kibby-Brown involved the prison's potential liability for breach of contract and the potentially wrongful treatment of the inmate Button was counseling. That is not the only possible inference: it may be that the conversation never reached that level of detail. But although his pleading is not artful, Button alleged the general contents of the conversation.
 
 
 7
 The district court looked broadly at Button's allegation about the conversation's contents, concluding that Button "was discussing an internal administrative matter, i.e., the education of prisoners." The court further reasoned that because Button was subordinate to his supervisors, they "had the right to alter [Button's] educational programs ... and there was no matter of public concern involved" when they forbade Button from using the educational materials as originally intended.
 
 
 8
 It may be that use of the educational materials was an "internal administrative matter." However, that conclusion does not mean that a conversation about the impact of the decision cannot involve matters of public concern. Button apparently alleges that the conversation involved the prison's contractual liability and the possibly illegal treatment of an inmate. Although Button may well have had a personal interest in the question, because it affected how he was allowed to conduct his counseling, the potential liability of the prison was a matter of public concern. See Cliff v. Board of School Comm'rs of City of Indianapolis, 42 F.3d 403, 410 (7th Cir. 1994) (noting that speech concerning matters of public concern is still protected even if personal concerns also enter into speech). The matters about which Button alleges that he spoke cannot be cast as solely personal concerns; the prison's liability for breach of contract, and the fair treatment of an inmate, are matters of general public concern. Those concerns are essentially separate from any personal dispute Button may have had with his supervisors. The district court's conclusion in this context was premature and the dismissal of the Sec. 1983 claim must be vacated.
 
 
 9
 Although we reverse the district court's dismissal, we note that further factual inquiry may ultimately defeat Button's claim. If, for example, discovery shows that Button's conversation with Deputy Director Brown really involved nothing about the prison's potential liability, but rather concerned only personal matters, summary judgment might be appropriate. For better or for worse, this sort of First Amendment claim turns largely on developed facts. Thus, we have only rarely reviewed 12(b)(6) dismissals in this context, but we frequently review summary judgments.[1] If the defendants are truly confused by perceived ambiguity in the complaint, it might be appropriate for them to move for a more definite statement of the pleadings, under Fed. R. Civ. P. 12(e). We make no comment on the merits of Button's suit, but simply reverse the district court's premature dismissal of Button's Sec. 1983 claim as far as it pertains to the First Amendment right to freedom of speech.
 
 
 10
 Button's claim based on his First Amendment right to freedom of religion is an entirely different matter. Button piggybacks onto his free speech claim a vague claim that the defendants violated his freedom of religion. He does not explain how, nor does he cite any authority for his position. Button apparently thinks that because he is a chaplain anything that happens to him that he dislikes must violate his freedom of religion. His claim is entirely frivolous. Plaintiffs should not try to cover all the bases by reciting supposed magic words, hoping the court will fill in all the gaps and grant them other people's money without the plaintiffs first having to figure out if they really have a claim. Skeletal arguments do not preserve a claim: Button has forfeited this claim, if we can even dignify it with that description. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (noting that "[j]udges are not like pigs, hunting for truffles buried in briefs."). We affirm the district court's dismissal of the Sec. 1983 claim to the extent it dismissed claims based upon First Amendment freedom of religion.
 
 
 11
 We uphold the district court's dismissal of Button's claim for tortious interference. Button, in essence, alleges that although he was not fired, Kibby-Brown and McEvers evaluated him unfavorably, resulting in reduced opportunities for pay raises, promotions and desirable transfers. Button does not allege that his supervisors told falsehoods about him. Rather, he essentially alleges that he exercised his First Amendment rights and was punished by getting poor evaluations.
 
 
 12
 Illinois recognizes tortious interference with prospective economic advantage in the employment context. See Fellhauer v. City of Geneva, 142 Ill.2d 495, 568 N.E.2d 870 (1991); Mittelman v. Witous, 135 Ill.2d 220, 552 N.E. 2d 973 (1989). However, as the district judge noted, the Illinois Supreme Court has never recognized the tort where a plaintiff employee was not discharged, but instead suffered some nebulous reduction in opportunity, such as the damage Button claims. Button points us only to Hoffman v. Yack, 57 Ill.App.3d 744, 373 N.E.2d 486 (5th Dist. 1978), where an Illinois appeals court implicitly allowed a cause of action where a plaintiff was allegedly harmed by his supervisors' actions resulting merely in his employer treating the plaintiff poorly.
 
 
 13
 We think the Illinois Supreme Court, if it addressed the question, would refuse to recognize Button's claim. In Zimmerman v. Buchheit of Sparta, Inc., 164 Ill.2d 29, 645 N.E.2d 877 (1994), the Illinois Supreme Court refused to expand a related tort, that of retaliatory discharge. Retaliatory discharge occurs when an employer fires an employee and the discharge violates a clear public policy, such as where an employee is fired for asserting his rights under workmen's compensation statutes. In Zimmerman, the plaintiff claimed a cause of action based on his employer's allegedly discriminating against and demoting him, even though he was not fired. The Illinois Supreme Court refused to recognize the claimed cause of action, strictly limiting the tort to cases where the employee was discharged. At its core, Zimmerman relied on a policy of avoiding courts unnecessarily "expanding judicial oversight of the workplace to include review of demotions, transfers, or other adverse work conditions." Id., 645 N.E.2d at 882.
 
 
 14
 Allowing employees in Button's situation to sue their supervisors would undercut Zimmerman. First, judges would be forced to sort out the "ill-defined and potentially all-encompassing concept" of alleged interference by supervisors resulting in bad treatment, a task Zimmerman indicates judges should not lightly undertake. See id. Button alleges that he was denied a variety of job opportunities, but his claim is essentially speculative: neither he nor anyone else knows if his evaluations would have been better or whether he would have received those job opportunities. Such sticky problems of proof might perhaps be worked out, but only at a cost, a cost explicitly disapproved in this context by the Illinois Supreme Court.
 
 
 15
 Second, in the specific context of adverse treatment short of retaliatory discharge, Button's proposed tort would often allow a back door to the recovery the Illinois Supreme Court rejected in Zimmerman. At least where a supervisor is distinct from the employer, a plaintiff could claim damages in contradiction to the mandate of Zimmerman, simply by suing his supervisor for essentially the same tort under a different name. For example, if a supervisor gave an underling poor evaluations because he made a worker's compensation claim, and the evaluations led to the underling's receiving lower raises from the employer, the underling could have a claim for tortious interference against the supervisor, even though Zimmerman instructs us he has no claim for illegitimate retaliation. Illinois law would limit tortious interference so that it does not allow a cause of action for plaintiffs in Button's position. The reasoning of Zimmerman trumps any support Hoffman would lend to Button. We uphold the dismissal of Button's state claim.
 
 
 16
 AFFIRMED IN PART, VACATED IN PART, and REMANDED.
 
 
 
 *
 Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation
 
 
 [1]
 The same is true of the Pickering balance between the employee's free speech rights and the government's interest. It is difficult to weigh properly the government's interest in a specific area simply by looking at the plaintiff's pleadings