Pat DANDINO, III, Plaintiff,

v.

Charles A. TIERI and Village of Steger, Defendants.

No. 94 C 2718.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 13, 1995.

Terrance A. Norton, IIT Kent Law Offices, Chicago, IL, for plaintiff.

No attorneys of record, for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Pat Dandino (Dandino) brought this action against defendants Charles Tieri (Tieri) and the Village of Steger (Village) under 42 U.S.C. § 1983 and state law. Dandino claims that his alleged patronage dismissal from the Village police force was a violation of his First and Fourteenth Amendment rights and a violation of Illinois common law on retaliatory discharge. Before us now is defendants' motion to dismiss under Rule 12(b)(6), alleging that Dandino cannot show the element of causation, that they are protected from § 1983 liability by the doctrine of qualified immunity, and that Dandino has no cause of action for retaliatory discharge. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Since this is a motion to dismiss we accept the well-pleaded allegations in Dandino's complaint. *Land v. Chicago Truck Drivers*, 25 F.3d 509, 511 (7th Cir.1994). Dandino was hired by the Steger Police Department on November 3, 1986, as a part-time police officer. During the spring of 1993, the Village had mayoral elections in which two political parties, the active party and the reform party, had candidates vying for the office of mayor. Dandino supported the candidate from the reform party, and contributed money to his campaign. Dandino's support for the reform party was made known to his coworkers through discussions he had about local politics. Defendant Tieri, who was the chief of police for the Steger Police Department, allegedly supported the active party and its candidate. Soon after the Village election for mayor, the Steger Police Department had an election to determine whether the members of the police department should be represented by a union. Dandino attended meetings about possible union representation, and ultimately voted in favor of union representation in the May election.

According to Dandino, Tieri did not approve of his political associations. In May 1993, Tieri told Dandino that he "had been told to fire plaintiff for 'getting involved in

politics.'" Dandino further alleges that in June 1993, Tieri began treating him in an unfair manner, including a drastic reduction in his work hours, and other forms of "harassment". Dandino claims that Tieri told him that he had "screwed up" for supporting the police union. On December 3, 1993, Tieri fired Dandino from the police force.

Dandino filed a two-count complaint against Tieri and the Village. Count I, brought under 42 U.S.C. § 1983, claims that Tieri violated Dandino's First and Fourteenth Amendment rights to freedom of speech and political association. Count II claims that Tieri and the Village are liable for retaliatory discharge under Illinois common law.[1] Defendants filed this motion to dismiss Count I on the grounds that Dandino cannot demonstrate that Tieri's conduct was the cause of his injuries, and that Tieri is protected by qualified immunity. Defendants further allege that Count II fails because Illinois does not allow a claim of retaliatory discharge for patronage dismissals.

### DISCUSSION

#### Count I: Section 1983 Action

##### A. *Causation and Mitigation of Damages*

Section 1983 actions, like all torts, require a showing of causation. *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985). Tieri claims that Dandino cannot establish causation since the Village has repeatedly offered him the opportunity to be reinstated, and that any injury that Dandino suffered was therefore on account of his rejection of the offers of reinstatement. The Village allegedly first made this offer during a conversation

between the Village president and Dandino on December 7, 1993, four days after Dandino was fired.[2] The Village made the offer two more times, once in a letter dated May 10, 1994, from the Village's attorney to an investigator of the Illinois State Labor Relations Board, and once in a letter dated July 19, 1994, from the Village's attorney to Dandino's attorney.

The offers of reinstatement, however, are not dispositive at this stage of the litigation. Whether Dandino failed to mitigate his damages is a question the trier of fact must determine when calculating damages. *See Smith v. Rowe,* 761 F.2d 360, 366–67 (7th Cir.1985) (mitigation of damages in § 1983 action is a question of fact for the jury). Dandino's failure to mitigate does not by itself render his otherwise properly pled claim inadequate. *See United States v. Shriver,* 989 F.2d 898, 906 (7th Cir.1992) (questions of fact cannot be resolved on a motion to dismiss). Granted, Tieri does go a step further by claiming that had Dandino accepted the offer of reinstatement he would have no damages and thus could not show that his conduct caused any harm. We, however, cannot make this determination on a motion to dismiss. The record is not clear when Dandino became aware of the offer, and whether the offer afforded Dandino "make-whole" relief which would include back-pay. To the extent that these issues remain in doubt, it is inappropriate to dismiss Dandino's claim. Since Dandino has alleged all that is required of him at this stage, we conclude that the § 1983 count has been properly pled.[3]

##### B. *Qualified Immunity*

When considering a governmental actor's individual liability under § 1983, we

---

1. We have jurisdiction over Count II through our supplemental jurisdiction under 28 U.S.C. § 1367.

2. Tieri submits the affidavit of Louis Sherman, the Village President, who claims to have told Dandino to come to his office and that he "would straighten this matter out."

3. The Village has also moved to dismiss any claim against it under § 1983 since Dandino did not allege any plan or custom of the Village to deny him his First Amendment rights. The Supreme Court has held that such a showing must

be made in official capacity actions against the governmental entity. *See, Monell v. Department of Social Services of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). The Village's motion appears to be unnecessary since Dandino did not include the Village in Count I. Whatever ambiguity there is over whom Dandino was suing in Count I was resolved in Dandino's response brief in which he unequivocally states that he is not proceeding against the Village under § 1983, but is focusing solely on Tieri's individual liability.

must also consider the doctrine of qualified immunity. "Under the doctrine of qualified immunity, 'governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The doctrine of qualified immunity requires a two-part analysis: (1) is the challenged conduct a constitutional violation, and (2) if so, was this constitutional right clearly established at the time of the conduct. *Kernats,* 35 F.3d at 1176. The Seventh Circuit has held that the burden of showing a clearly established constitutional right lies with the plaintiff. *Id.* In determining whether a constitutional right is clearly established the plaintiff must show that "'[t]he contours of the right [are] sufficiently clear that a reasonable official would understand what he is doing violates that right' at the time of the incident." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

■ The first prong of the qualified immunity analysis requires us to determine whether Tieri's decision to fire Dandino for political reasons violated the First Amendment. In the political patronage area courts have traditionally been mindful of the conflicting interests between a government official's need for loyal and compatible subordinates, and the First Amendment's "legacy of protecting the individual's freedom of association and his right to meaningfully exercise his political beliefs." *Upton v. Thompson,* 930 F.2d 1209, 1213 (7th Cir.1991), *cert. denied,* 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992). The Supreme Court has endeavored to strike a balance between these competing interests. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). In *Elrod,* the Court held that while the First Amendment generally protects government employees' right of po-

litical association, an exception exists for "policymaking officials." *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687. The Court reshaped the standard somewhat in *Branti;* there the Court held "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particularized position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

The Seventh Circuit has interpreted the Supreme Court's caselaw as requiring "'an examination of the *powers* inherent in a given office, as opposed to the functions performed by a particular occupant of that office,'" *Upton,* 930 F.2d at 1214 (quoting *Tomczak v. City of Chicago,* 765 F.2d 633, 640 (7th Cir), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985)), to determine whether "'the position held by the individual authorizes, either directly or indirectly, *meaningful input* into government decisionmaking on issues where there is room for principled disagreement on goals or *their implementation.*'" *Upton,* 930 F.2d at 1214 (quoting *Tomczak,* 765 F.2d at 641).

■ The proper inquiry here is whether Dandino's position as a part-time police officer is one in which "party affiliation is an appropriate requirement for the effective performance of the [job]". *See Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. The Seventh Circuit has previously examined the constitutionality of patronage dismissals of law enforcement personnel. In *Upton,* the court held that since a sheriff has broad discretion to set policy, and that a deputy sheriff likely constitutes the core group of advisors to the sheriff, a deputy sheriff is likely to "'make some decisions that actually create policy.'" *Upton,* 930 F.2d at 1215 (quoting *Livas v. Petka,* 711 F.2d 798, 800 (7th Cir.1983)); *see also Heideman v. Wirsing,* 7 F.3d 659 (7th Cir.1993) (same); *Dimmig v. Wahl,* 983 F.2d 86 (7th Cir.), *cert. denied* — U.S. ——, 114 S.Ct. 176, 126 L.Ed.2d 135 (1993) (same). Tieri argues that *Upton* and its progeny are dispositive of this case.

We reject at the outset any contention that *Upton* holds that *any* patronage dismissal of law enforcement personnel is *per se* constitutional under the First Amendment. The Seventh Circuit's recent decision in *Kolman v. Sheahan,* 31 F.3d 429 (7th Cir.1994) supports our reading of *Upton.* There the court reversed the district court's dismissal of the action as premature, holding that "*Upton* and *Dimmig* do not create a *per se* rule that anyone who achieves the title of Chief Deputy necessarily inhabits a decisionmaking job." *Id.* at 432; *see also Zorzi v. County of Putnam,* 30 F.3d 885, 892 (7th Cir.1994) (sheriff department's radio dispatcher was not in a policymaking position such that qualified immunity would not be justified). The *Kolman* court concluded there must be a particularized inquiry into the nature of the plaintiff's position for all cases except those in which the political nature of the position is obvious to the reviewing court.[4] Whether Dandino's position is one in which party affiliation is an appropriate requirement of the job is not a conclusion we can make on a barren record. We have no knowledge of the particular tasks assigned to a part-time police officer in the Steger Police Department and refuse to speculate what they may be. *See Kolman,* 31 F.3d at 433 ("we cannot affirm the dismissal based on a probability, when the allegations of the complaint allow for other possibilities").[5] Moreover, considering the unique nature of this alleged patronage firing, dismissal of the action is even less appropriate. Since Tieri was not an elected official, this case is different from the usual patronage cases in which a newly elected high-ranking official changes the members of his staff. It is debatable whether Tieri had any legitimate interest in firing low-level subordinates who disagreed with him politically. However, since this determination is a factual one, we will allow the parties to further develop the record before ruling on this issue.

Similarly, we cannot determine whether Dandino's alleged First Amendment right to be free from patronage dismissal was clearly established at the end of 1993. We have no way of concluding that Dandino's position as a part-time police officer involved the implementation of policy, without factual development by the parties. Again we refuse to speculate as to what Dandino's exact job duties were. *See Kolman,* 31 F.3d at 434 ("even a qualified immunity inquiry cannot take place until the facts about the [plaintiff's position] and the plaintiff['s] roles there are put on the table").

### Count II: Retaliatory Discharge

■ While Illinois still maintains the general rule that an at-will employee may be discharged at any time, the Illinois Supreme Court has recognized an exception in the case of retaliatory discharge. *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 564–66, 384 N.E.2d 353, 358–60 (1979). To state a cause of action for retaliatory discharge in Illinois a plaintiff must show (1) that he was discharged, (2) that the discharge was in retaliation for his activities, and (3) that it violates a clear mandate of public policy. *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 30, 601 N.E.2d 720, 728 (1992).

■ Since we must accept the well-pleaded allegations of Dandino's complaint on this motion to dismiss, *Caldwell v. City of Elwood,* 959 F.2d 670, 672 (7th Cir.1992), there is no question that Dandino can meet the first two prongs of the test. It is the third prong where Dandino flounders. He fails to highlight a single case allowing a cause of action for retaliatory discharge in a case involving patronage dismissal. The absence of any supporting authority dooms Dandino's claim. The Illinois Supreme Court has repeatedly held that the tort of retaliatory discharge is a very narrow excep-

---

**4.** The court cited a mayor's chief of staff as an example of an obviously political position.

**5.** In addition, the court's analysis in *Upton* makes clear that many factors are to be considered in these cases, such as how closely the defendant and the plaintiff must work, the degree of animosity generated by the plaintiff's lack of political support, and the degree of latitude the plaintiff has in carrying out his duties. *Upton,* 930 F.2d at 1215–16. While we may speculate as to the job duties of a part-time police officer in a suburban police department, such speculation would be unwarranted considering the ability of the parties to clarify the issues.

tion to the general rule of employment at-will, and that the contours of the tort are not to be expanded. *See Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 206 Ill.Dec. 625, 629, 645 N.E.2d 877, 881 (1994) (citing cases refusing to expand the tort). We must also be mindful that "[f]ederal judges are disinclined to make bold departures in areas of law that we have no responsibility for developing." *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985). It is up to the legislature and the courts of Illinois to expand the tort of retaliatory discharge to cover political patronage cases, not a federal district court sitting in diversity.

## CONCLUSION

For the foregoing reasons defendants' motion to dismiss the complaint is granted in part and denied in part.