# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2003

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
a Massachusetts mutual insurance company,
individually and as subrogee of Principle
Construction Corp. and Arlington Structural
Steel Co., Inc.,

*Plaintiff-Appellant,*

v.

STATEWIDE INSURANCE COMPANY, an Illinois
stock insurance company, and PATRICK C. BOND,
a disabled person, by and through his father and
guardian, Patrick S. Bond,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2471—**Charles P. Kocoras**, *Chief Judge.*

———————

ARGUED NOVEMBER 3, 2003—DECIDED DECEMBER 10, 2003

———————

Before POSNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Liberty Mutual Fire Insurance Company filed this action pursuant to the district court's diversity jurisdiction, 28 U.S.C. § 1332, seeking a declara-

tory judgment that Statewide Insurance Company is obligated to defend and indemnify two companies Liberty defended in a personal injury lawsuit. The district court considered cross-motions for summary judgment and granted judgment for Statewide. Liberty appeals.

Liberty's insured, Principle Construction Corporation, entered into a contract to be the general contractor for the construction of a commercial building in Waukegan, Illinois. Principle entered into a subcontract with Arlington Structural Steel Co., Inc. requiring Arlington to furnish and erect structural steel for the project. Under the contract, Arlington was required to name Principle as an additional insured under Arlington's commercial general liability policy. Arlington, in turn, entered into a sub-subcontract with Bond Enterprises. The contract required Bond to name Principle and Arlington additional insureds under Bond's commercial general liability policy. Bond paid a $35 additional premium for the additional-insured coverage from its insurer, Statewide.

Patrick C. Bond, an employee of Bond, was injured while working on the project, and he filed a personal injury lawsuit against Arlington and Principle in the circuit court of Cook County, Illinois. Liberty Mutual is defending Principle and Arlington in the lawsuit. At the same time, Liberty Mutual contends that Statewide is obligated to defend Principle and Arlington under the additional-insured endorsement in Bond's policy. Statewide has refused to defend either company.

In its refusal to defend the companies, Statewide relies on limitations to the coverage provided in its policy to additional insureds. Those limitations are:

1.  The coverage afforded to the Additional Insured under this endorsement is solely limited to liability specifically resulting from the conduct of the

Named Insured which may be imputed to the Additional Insured by virtue of the conduct of the Named Insured.

2. This endorsement provides no coverage to the Additional Insured for liability arising out of the claimed negligence of the Additional Insured, other than which is imputed to the Additional Insured by virtue of the conduct of the Named Insured.

Liberty contends that the limitations are so broad that Statewide's additional-insured endorsement furnishes no tangible coverage that could ever apply in this situation; therefore the coverage is illusory, and illusory coverage is against the public policy of Illinois.

As Liberty sees it, the only conceivable coverage for additional insureds under the Statewide policy is for claims in strict liability, and Liberty can imagine no circumstance on this construction job where strict liability would apply. Under Illinois law, there are only two types of strict liability claims: for dangerous products and for ultrahazardous activity such as blasting or demolition. In its application for insurance from Statewide, Bond answered detailed questions about the nature of its business operations. Liberty argues that the answers revealed that Bond did not engage in any activity which could possibly give rise to strict liability. The question posed to us, then, is whether the additional-insured endorsement in the Statewide policy provides illusory coverage and as a result Statewide must defend and indemnify Arlington and Principle. Liberty would have us answer in its favor or certify the question to the Illinois Supreme Court pursuant to our Rule 52 and the Illinois Supreme Court Rule 20.

This question is not appropriate for certification to the Illinois Supreme Court. In order for a question to be certified, certain criteria must be met:

> [C]ertification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.

*State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).

The Illinois Supreme Court has not spoken on the issue presented in this case. But that may be so because Illinois appellate courts have spoken, and they are not in conflict. On this record, we see no reason why we should ask the Illinois Supreme Court to enter the fray.

Because this is a diversity case, we apply the law of Illinois as we believe the Illinois Supreme Court would apply it. As we said, although the highest court in Illinois has not spoken on the issue before us, Illinois appellate courts have. In that circumstance, we must estimate how the state supreme court would rule. *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507 (7th Cir. 2003); *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521 (7th Cir. 1998). And the rulings of state appellate courts "must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *Pate*, 275 F.3d at 669; *see also Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087 (7th Cir. 1999).

In *American Country Insurance Co. v. Kraemer Brothers, Inc.*, 699 N.E.2d 1056 (Ill. App. 1998), the dispute was between Kraemer, a general contractor, and a masonry subcontractor for construction work that was not ultra-hazardous. The limitations clause in the insurance policy was similar to the one here: there was "no coverage to the Additional Insured for liability arising out of the claimed negligence of the Additional Insured, other than which may

be imputed to the Additional Insured by virtue of the conduct of the Named Insured." The court considered the argument Liberty makes—that the "coverage was illusory because it is difficult to imagine any factual scenario wherein Kraemer could be held vicariously liable for a sub-contractor's acts or omissions at the jobsite." The court found that there was coverage for claims based in strict liability and, accordingly, the coverage was not illusory: "Just because there are fewer strict liability claims than negligence claims does not make the coverage illusory. There is real coverage for strict liability claims."

*American Country Insurance Co. v. Cline*, 722 N.E.2d 755 (Ill. App. 1999), also involved a clause in a subcontractor's comprehensive general liability policy limiting liability for additional insureds in the same manner as the one before us. The court rejected a claim that the endorsement was illusory. Because the additional-insured endorsements were obtained for a small premium payment, it made sense to the court that the coverage would be limited. In addition, the policy had been submitted to the Illinois Department of Insurance, which had not rejected it. The court said that the department's silence (in not rejecting the policy) was "entitled to great weight." At 762.

Liberty attempts to convince us that there are persuasive indications that the Illinois Supreme Court would decide these cases differently from the appellate courts. Why? Because Liberty thinks the reasoning of the appellate courts is flawed. We are not persuaded. Flawed reasoning is often in the eye of the beholder. Slightly more persuasive is the dissent in *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Glenview Park District*, 632 N.E.2d 1039 (Ill. 1994). Skirting the issue, the Illinois Supreme Court found it unnecessary to decide whether a similar additional-insured clause was unenforceable. Two of the justices then on the court thought that, particularly on the facts of the

case, the clause violated public policy. What we learn from the case is that there may be dissension on the court on the issue before us, but not necessarily that the dissenting position will prevail. Liberty has pointed to no authority in Illinois law which supports its position, nor has it convinced us that there are indications that the tide is turning in its favor.

On the other hand, there are reasons for us to follow the result reached by the Illinois appellate courts. First is the strong public policy favoring freedom of contract. *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295 (Ill. 1997). The contracting parties in this case were companies, not hapless individuals. The contracts required Bond to name Principle and Arlington as additional insureds and gave Arlington the right to review the insurance policy. Also, Bond provided Arlington with a certificate of insurance which explicitly put Arlington on notice that it should review the policy. There is no evidence that Arlington objected to Bond's policy. In fact, Arlington did not sue Statewide or Bond; Liberty did. Then there is the matter of the premium. Bond paid $35 for the coverage for additional insureds. Apparently, a company gets what it pays for. And that's what it got here—very limited coverage for additional insureds.

The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—12-10-03