# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-1593

CARL E. THOMAS,

*Plaintiff-Appellant*,

v.

GUARDSMARK, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8848—**Suzanne B. Conlon**, *Judge.*

_____

ARGUED NOVEMBER 3, 2003—DECIDED AUGUST 27, 2004

_____

Before POSNER, DIANE P. WOOD, and EVANS, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* On November 16, 2001,
Guardsmark, Inc. indefinitely suspended its employee, secur-
ity officer Carl Thomas, after he suggested in a televised
interview that Guardsmark did not adequately screen its
employees for prior felony convictions. Almost a year later,
Thomas filed suit against Guardsmark, alleging retaliatory
discharge in violation of Illinois public policy. After remov-
ing to federal district court, Guardsmark successfully moved
for judgment on the pleadings pursuant to FED. R. CIV. P.
12(c). Guardsmark argued, and the district court agreed,
that Thomas was "effectively discharged" at the time he was

suspended, and thus his action was barred by a six-month
limitations period found in his Employment Agreement with
Guardsmark. For the reasons discussed below, we reverse
and remand to the district court for development of the record
regarding Thomas's employment status after Guardsmark
indefinitely suspended him in November 2001.

**I**

In September 1998, Guardsmark hired Thomas to work
as a security officer for a CITGO oil refinery in Lemont,
Illinois. As a condition of his employment, Thomas signed
an Employment Agreement, which detailed the terms and
conditions of his employment. The Agreement specified that
"[e]xcept for charges or claims filed with the Equal
Employment Opportunity Commission or under any of the
statutes enforced by said agency, any legal action or pro-
ceeding related to or arising out of this Agreement or the
employment of Employee by Guardsmark must be brought
by Employee within six months of the date the cause of
action arose or it shall be time-barred." It also provided that
Tennessee law would "govern the interpretation, validity,
and effect of this Agreement." Thomas and a Guardsmark rep-
resentative signed the Agreement on September 21, 1998.

In November 2001, an investigative reporter for a local news
station contacted Thomas in connection with a story about
regulation of the security industry in Illinois. In an on-camera
interview, Thomas stated that a fellow Guardsmark security
officer at the CITGO refinery had bragged about his felony
record. Thomas also opined that convicted felons should not be
trusted to provide security at installations that are likely
terrorist targets, such as oil refineries. The story was broad-
cast on November 8, 2001, and eight days later, Edward
Healy, Vice President and Manager of Guardsmark's
Chicago office, informed Thomas that his employment was
indefinitely suspended because of his unauthorized inter-

view with the news station. Since then, Guardsmark has not compensated Thomas or allowed him to perform services for the company.

On October 31, 2002, Thomas filed a one-count complaint against Guardsmark and Healy in the Circuit Court of Cook County, alleging retaliatory discharge in violation of the public policy of the State of Illinois. Guardsmark removed to federal district court, arguing that Thomas, an Illinois citizen, had improperly joined Healy, also an Illinois citizen, and that full diversity would exist if the latter were dismissed. When Thomas filed suit, Guardsmark was a Delaware corporation with its principal place of business in Tennessee; by the time it filed its notice of removal, it had converted into a limited liability corporation, with members who are citizens of New York and Tennessee. See *Kanzelberger v. Kanzelberger,* 782 F.2d 774, 776 (7th Cir. 1986) (providing that "diversity must exist both when the suit is filed—as the statute itself makes clear, see 28 U.S.C. § 1441(a)—and when it is removed"). The court granted Guardsmark's motion to dismiss Healy and then denied Thomas's motion to remand. After filing its answer, to which it attached the Employment Agreement, Guardsmark moved for a judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). The court granted the motion, finding Thomas's claim barred by the six-month limitations period provided in the Agreement. This appeal followed.

## II

As a preliminary matter, we briefly address Guardsmark's motion to strike, which asks that we disregard several pages of Thomas's supplemental appendix that were not included in the record before the district court. These materials document his efforts to access his Guardsmark 401(k) retirement plan following his indefinite suspension. We deny Guardsmark's motion, on the ground that Thomas provided

these materials not for evidentiary, but rather for illustrative purposes—that is, not to establish the truth of their contents, but to show that there might be a set of facts consistent with his allegations in the complaint, such that the Agreement's six-month limitations period would not bar his claim. In any event, as the discussion that follows makes clear, we have not taken these documents into account in holding that Guardsmark cannot prevail on its motion for judgment on the pleadings.

We review *de novo* Rule 12(c) motions for judgment on the pleadings. *Midwest Gas Servs., Inc. v. Ind. Gas Co.,* 317 F.3d 703, 709 (7th Cir. 2003). Such a motion should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. In evaluating the motion, we accept all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* (internal citations and quotation marks omitted); *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("A complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations." (internal quotation marks omitted)).

Thomas presents three arguments in support of his position that his retaliatory discharge claim is not barred by the six-month limitations period provided in the Employment Agreement. First, he contends that the Agreement does "not constitute a binding and enforceable contract." In order to evaluate this point, we must determine what body of law governs the validity of the Agreement. The Agreement itself provides that Tennessee law "govern[s] the interpretation, validity, and effect of this Agreement." In a diversity case, the federal court must apply the choice of law rules of the forum state to determine applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary

to Illinois's fundamental public policy. *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). As an abstract matter, we see nothing in Illinois's choice-of-law rules that would preclude recognizing the selection of Tennessee law on the question of the validity of the contract. (No one is disputing that the Agreement exists, or that both parties signed it.) Nonetheless, Guardsmark concedes in its brief that "[u]ntil the district court had determined that a valid contract containing a choice of law clause existed, it was appropriate for the court to apply Illinois law to the contract to determine the threshold question of validity." Appellee's Brief at 9 n.4. This concession makes it unnecessary for us to decide whether Illinois or Tennessee law applies to this threshold issue, or if those two laws differ in any material sense.

Thomas argues that the Agreement is unenforceable both because Guardsmark did not review and approve the Agreement, as required by the Agreement itself, and because the Agreement "create[d] no obligation on Guardsmark." Neither of these arguments is persuasive. The preamble of the Agreement says that "[t]he Agreement shall not become binding upon Guardsmark until reviewed and approved by the Compliance Control Officer in Guardsmark's Executive Offices in Memphis, Tennessee." Thomas asserts that "[t]here is no evidence to show that Guardsmark ever fulfilled this lone obligation," but the record indicates otherwise. Guardsmark attached to its answer to Thomas's complaint a document entitled, "Guardsmark: Personnel File Review," which lists Thomas's name and date of hire. This document is initialed by a "Selection Controller" and has a check next to the heading "APPROVED." Thomas nonetheless insists that Guardsmark cannot rely on this document because its "purpose and authenticity . . . is completely unexplained." See *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 456 (7th Cir. 1998) (holding that, for purposes of Rule 12(c), courts need not accept as legitimate

"documents that do not by their nature imply some level of credibility"). We need not verify this document's authenticity or otherwise confirm Guardsmark's approval of Thomas's application, however, because "[p]arties to a contract have the power to waive provisions placed in the contract for their benefit and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required." *In re Liquidation of Inter-Am. Ins. Co. of Ill.*, 768 N.E.2d 182, 193 (Ill. App. Ct. 2002). As Guardsmark's approval of Thomas's employment application was exclusively for the company's benefit, Thomas cannot now use this term as a ground for invalidating the Agreement.

Thomas also argues that the Agreement is invalid because "[t]here is simply nothing that Guardsmark agrees to do in exchange for the many obligations it seeks to impose on Mr. Thomas." It is well-established that consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them. *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999). Under Illinois law, "[c]ontinued employment for a substantial period of time is sufficient consideration to support an employment agreement." *Lawrence & Allen, Inc. v. Cambridge Human Res. Group, Inc.*, 685 N.E.2d 434, 441 (Ill. App. Ct. 1997); see also *Schoppert v. CCTC Int'l, Inc.*, 972 F. Supp. 444, 447 (N.D. Ill. 1997) (stating that, under Illinois law, "continued performance is seen as both acceptance and consideration" for an at-will employment agreement). Thomas's continued acceptance of the benefits of employment by Guardsmark for three years after both parties signed the Agreement constituted valid consideration for the legal detriment imposed by the terms of the Agreement.

Thomas next argues that, even if the Agreement is a valid contract, his claim is not barred because the six-month limitations period is unenforceable. Under the terms of the Agreement, the enforceability of this provision is governed

by Tennessee law. As we have already noted, Illinois courts respect a contractual choice-of-law clause if the contract is valid, and the law chosen is not contrary to Illinois's fundamental public policy. *Fulcrum*, 230 F.3d at 1011. In addition, consistent with RESTATEMENT (SECOND) of CONFLICT of LAWS § 187 (1971), some Illinois courts have also required that "'there be some relationship between the chosen [law] and the parties or the transaction.'" See, *e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713, 719 (7th Cir. 1994) (quoting *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 754 (Ill. App. Ct. 1987)), *rev'd on other grounds,* 514 U.S. 52 (1995); *Newell Co. v. Petersen*, 758 N.E.2d 903, 922 (Ill. App. Ct. 2001); *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 568 N.E.2d 9, 14 (Ill. App. Ct. 1990).

Neither Guardsmark nor Thomas suggests that Tennessee law upholding contractual limitations periods is contrary to Illinois's public policy, as both states have routinely upheld contractual provisions shortening a limitations period otherwise provided by statute. See *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1203 (7th Cir. 1992) ("[C]ontractual limitations of action are generally upheld under Illinois law."); *United States v. Republic Ins. Co.*,775 F.2d 156, 160 (6th Cir. 1985) ("In Tennessee, limitation of action clauses have long been upheld as long as a reasonable period of time is provided [for bringing suit]." (internal quotation marks omitted)). Furthermore, under Illinois law, the sufficient relationship requirement is generally satisfied when the contractual choice of law is that of the state in which one of the parties is headquartered. See *Mastrobuono*, 20 F.3d at 719 (applying Illinois conflicts law, state of principal place of business was reasonable for choice of law provision); *Newell Co.*, 758 N.E.2d at 922 (same). As Guardsmark's principal place of business is Tennessee, the sufficient relationship requirement is satisfied, and Tennessee law therefore governs the enforceability of the Agreement's limitations period.

In Tennessee, "it is a well established general rule that in the absence of a prohibitory statute, a contract provision is valid which limits the time for bringing suit, if a reasonable period of time is provided, and that the general statutes of limitations are not prohibitory of such contractual provisions as between private individuals or corporations." *State v. Evans*, 334 S.W.2d 337, 342 (Tenn. Ct. App. 1959); see also *Republic Ins. Co.*, 775 F.2d at 160 (same); *Webb v. Ins. Co. of N. Am.*, 581 F. Supp. 244, 250 (W.D. Tenn. 1984) (same); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938) ("Contractual limitations . . . are valid and enforceable."); *cf. Irving Pulp & Paper, Ltd. v. Dunbar Transfer & Storage Co.,* 732 F.2d 511, 514 (6th Cir. 1984) (defendant equitably estopped from relying on contractual limitations defense where it misled plaintiff by initially admitting liability but later recanting, causing plaintiff to file suit after limitations period expired). As Thomas points to no statute prohibiting the Agreement's six-month limitations period and does not suggest that this period was *per se* unreasonable, we find the limitations period enforceable under Tennessee law.

We turn, then, to Thomas's final argument: that his retaliatory discharge claim is not barred by the Agreement's limitations period because his cause of action did not arise more than six months before he filed suit. Illinois law governs our analysis of this issue, because it relates to an aspect of the statute of limitations not addressed in the agreement. A federal court sitting in diversity must follow the statute of limitations that the state in which it is sitting would use. See *Guaranty Trust Co. v. York,* 326 U.S. 99, 110 (1945). Illinois considers statutes of limitations to be procedural questions governed by the law of the forum. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 770 N.E.2d 177, 194 (Ill. 2002). We therefore turn to Illinois law to decide when Thomas's claim accrued; we add comparisons to Tennessee law to illustrate the point that the same result is likely no matter which state's law is used.

In general, Illinois courts hold that "a limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 85 (Ill. 2003); see *Ind. Ins. Co. v. Machon & Machon, Inc.,* 753 N.E.2d 442, 445 (Ill. App. Ct. 2001). According to Guardsmark, Thomas was in possession of such facts on November 16, 2001, which it characterizes as the effective date of his discharge. As of that date, Thomas was indefinitely suspended without pay. If it is the relevant date to use, then his claim is barred because he did not file suit until almost a year later, on October 31, 2002. The district court agreed with Guardsmark's argument, citing *Vector-Springfield Properties, Ltd. v. Central Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir. 1997), for the proposition that "tort claims, like retaliatory discharge, accrue when the plaintiff 'became possessed of sufficient information concerning [his] injury to put a reasonable person on inquiry to determine whether actionable conduct was involved.'" The court found Thomas's claim untimely because he "should have realized shortly after November 16, 2001 that Guardsmark effectively terminated his employment."

The problem with this position is that only an *actual* termination can support an employee's retaliatory discharge claim under Illinois law. In the closely related area of discriminatory termination cases, the Tennessee Supreme Court has held that a discriminatory discharge is complete "when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future." *Weber v. Moses,* 938 S.W.2d 387, 391-92 (Tenn. 1996). In Illinois, a plaintiff states a claim for retaliatory discharge "only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 880 (Ill. 1994) (internal quotation marks omitted). "Discharge in an employment context is commonly under-

stood to mean the release, dismissal, or termination of an employee." *Welsh v. Commonwealth Edison*, 713 N.E.2d 679, 683 (Ill. App. Ct. 1999) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 644 (1993); BLACK'S LAW DICTIONARY 463 (6th ed. 1990)).

The Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1121 (Ill. 1999). In particular, the court "has thus far declined to recognize a cause of action for retaliatory constructive discharge." *Id.*; see also *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 569 (Ill. 1998) (noting the Illinois Supreme Court's "past precedent admonishing against the expansion of this tort"); *Zimmerman*, 645 N.E.2d at 882 ("Illinois courts have refused to accept a 'constructive discharge' concept."); *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 864 (Ill. App. Ct. 2000) ("The tort of retaliatory discharge does not encompass any behavior other than actual termination of employment."). On this basis, Illinois courts have held that an employee's suspension does not qualify as a "discharge" for purposes of a retaliatory discharge action and has therefore rejected such claims. See, *e.g.*, *Melton v. Cent. Ill. Pub. Serv. Co.*, 581 N.E.2d 423, 425-26 (Ill. App. Ct. 1991) (denying plaintiffs' request that the court "expand the notion of retaliatory discharge to cases . . . where the employer takes disciplinary action short of discharge, such as the suspension of one of the plaintiffs in this case"). While Tennessee has taken a somewhat more liberal view of retaliatory constructive discharge, it has focused on the situation in which conditions have become so intolerable for the employee that the employee's abandonment of the job is equivalent to a discharge, not the situation in which the employer gives ambiguous signals to the employee about the continued status of his employment. See *Crews v. Buckman Laboratories Int'l, Inc.,* 78 S.W.3d 852, 865 (Tenn. 2002). Compare *Pa. State Police v. Suders,* 124 S.Ct. 2342, 2354

(2004) (constructive discharge plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign").

In light of these decisions, we decline to find Thomas's retaliatory discharge claim barred on the theory that Guardsmark's action in November 2001 was equivalent to a discharge. Such a holding would contravene Illinois law, see *Prince v. Rescorp Realty*, 940 F.2d 1104, 1107 (7th Cir. 1991), and it would disregard the requirement in Tennessee law of an "unequivocal" notice of a termination. It would invite employers to manipulate their communications with employees so as to avoid liability. Rather than fire employees and risk a retaliatory discharge action, employers would have an incentive indefinitely to "suspend" them in the hope that they will not realize that they have been discharged until after the limitations period has expired. See *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 912 (Ill. 1988) (emphasizing that "an employer cannot escape responsibility for an improper discharge simply because he never uttered the words 'you're fired'"). We also recognize, however, that substance should prevail over form, and if Thomas's indefinite suspension was or became an actual discharge, the contractual limitations period would begin to run at that point. See *id.* ("So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes."). Thomas must therefore tread a thin line: On the one hand, he can avoid the Agreement's limitations period only if his indefinite suspension in November 2001 did not constitute an actual discharge. On the other hand, he must establish that, at some point prior to his filing suit in October 2002, his suspension was converted into an actual discharge, such that he can now state a retaliatory discharge claim.

Because this case comes to us on a Rule 12(c) motion for judgment on the pleadings, we lack sufficient information to determine when, if ever, Thomas's indefinite suspension became an actual discharge. Discovery might reveal more about Guardsmark's corporate practices with respect to indefinite suspensions, including whether such a suspension is the equivalent of a discharge because no suspended employee is in fact ever recalled. In addition, Guardsmark's employee and insurance records and information regarding Thomas's access to the funds in his 401(k) retirement plan might assist in clarifying Thomas's employment status during the period between November 2001 and October 2002. While this case may ultimately prove appropriate for summary judgment, Guardsmark cannot prevail as a matter of law at this stage in the proceedings, given that a disputed question of fact remains as to whether Thomas was discharged and, if so, when he was.

## III

As it is not beyond doubt that Thomas will be unable to prove any facts that would support his claim for relief, we REVERSE the district court's judgment for Guardsmark and REMAND for proceedings consistent with this opinion.

No. 03-1593 13

A true Copy:

Teste:

_____
***Clerk of the United States Court of***
***Appeals for the Seventh Circuit***

USCA-02-C-0072—8-27-04