UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 5, 2006
Decided April 26, 2006

**Before**

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3861

JASON SEDDON,
    *Plaintiff-Appellant,*

    *v.*

MAYTAG CORPORATION,
    *Defendant-Appellee.*

Appeal from the United States
District Court for the
Southern District of Illinois.

No. 04 C 4058

J. Phil Gilbert,
*Judge.*

**O R D E R**

Jason Seddon filed this action in Illinois state court alleging his former employer, Maytag Corporation, violated Illinois law by constructively discharging him for filing a workers' compensation claim. Maytag removed the action to the United States District Court for the Southern District of Illinois, and that court properly exercised its diversity jurisdiction under 28 U.S.C. § 1332: Seddon is an Illinois citizen seeking more than $75,000 in damages, and Maytag is a Delaware corporation with its principal place of business in Iowa. The district court granted Maytag's motion for summary judgment and Seddon appealed. We affirm the district court's judgment because the Illinois appellate courts have never recognized a retaliation action based on constructive discharge.

Seddon hurt his back while working on Maytag's assembly line in November 2002. On December 2, 2002, Seddon filed a workers' compensation claim with the

Illinois Industrial Commission naming Maytag as the respondent.  He returned to work following his injury, but his back pain persisted so he visited his chiropractor in late December.  His chiropractor found him "totally incapacitated" and said he should refrain from all work.  In February 2003 Maytag required Seddon to submit to an examination by a physician of its choosing; Maytag's doctor concluded he could return to work immediately without any "light duty" restrictions.  Seddon followed his chiropractor's advice and remained on unpaid medical leave until late June 2003, when his personal physician drafted a note indicating he could return to work.  During his six-month absence, Seddon received disability insurance payments and kept Maytag advised of his medical status by providing the company with doctor's notes every thirty days as required by his union's contract with Maytag.

Seddon reported back for work on June 28 but soon encountered further back pain causing him to miss work July 16-18.  His personal physician wrote a note dated July 21 asking Maytag to "[p]lease allow Jason to do no bending or heavy lifting due to low back sprain."  Maytag refused to assign Seddon to "light duty" work because in February its doctor cleared him to return to work without restrictions.  Due to Maytag's refusal to place him "light duty" status, Seddon returned to unpaid medical leave on July 22.  At his deposition Seddon disputed whether he was on leave during July and August 2003, but he was surely aware Maytag considered him on leave when the company sent him a letter dated August 26.  The letter advised Seddon that he had not updated the company on his medical status within the past thirty days, and that if he did not do so by September 9, the company would "assume that you no longer wish to remain on leave of absence and have terminated your employment with Maytag []."  Seddon received the August 26 letter but never responded or provided Maytag with updated medical information as required by his union's contract.  Consequently, Maytag sent Seddon a letter dated September 11 advising him that his employment was terminated due to his failure to update his medical information by the September 9 deadline.

Seddon's counsel made it clear both in his appellate briefs and at oral argument that he bases his retaliation claim solely on the constructive discharge he allegedly suffered when Maytag refused to give him "light duty" work in July 2003.  He does not contend that his actual termination in September 2003 was the product of unlawful retaliation.  The district court concluded Seddon could not prevail because Illinois law does not recognize a retaliatory discharge action for anything short of actual termination and there was no evidence connecting his actual discharge to any unlawful motive.

The Illinois Supreme Court has never recognized a cause of action for retaliatory constructive discharge, and it has repeatedly emphasized its disinclination to expand the present scope of retaliation claims.  *E.g.*, *Metzger v.*

*DaRosa*, 805 N.E. 2d 1165, 1173 (Ill. 2004) ("[T]his court has consistently sought to restrict the common law tort of retaliatory discharge. . . . We have . . . *never* recognized a common law tort for any injury short of actual discharge."); *Fisher v. Lexington Health Care, Inc.*, 722 N.E. 2d 1115, 1121 (Ill. 1999) ("this court has thus far declined to recognize a cause of action for retaliatory constructive discharge or retaliatory demotion"); *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E. 2d 877, 882 (Ill. 1994) ("We note that Illinois courts have refused to accept a 'constructive discharge' concept."); *Hartlein v. Ill. Power Co.*, 601 N.E. 2d 720, 730 (Ill. 1992) ("We further decline to expand the tort of retaliatory discharge, on these facts, to encompass the concept of 'constructive discharge.'"); *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E. 2d 909, 912 (Ill. 1988) ("We agree that plaintiff has sufficiently alleged that she was discharged, but wish to make abundantly clear that we are not now endorsing the constructive discharge concept.").

In light of these precedents from the Illinois Supreme Court, we have previously noted that Illinois courts do not recognize retaliation claims based on constructive discharge. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) ("only an *actual* termination can support an employee's retaliatory discharge claim under Illinois law"). Our decision in *Thomas* also discussed the long and uninterrupted line of Illinois cases frowning upon any expansion of retaliatory discharge beyond actual terminations. *Id.* at 708. Seddon cites two unreported district court decisions that suggest the Illinois Supreme Court has not categorically foreclosed the possibility of recognizing a retaliatory constructive discharge claim in the future. *See Contreras v. Suncast Corp.*, No. 96 C 3439, 1997 WL 598120, at *5 (N.D. Ill. Sept. 19, 1997); *Handel v. Belvedere USA Corp.*, No. 00 C 50420, 2001 WL 1286842, at *2 (N.D. Ill. Oct. 22, 2001). But as things stand now, retaliatory constructive discharge claims are not recognized in Illinois, and the Illinois Supreme Court's language strongly discourages us from turning Seddon's claim into a novel cause of action under Illinois law.

Seddon urges us to ask the Illinois Supreme Court whether it would recognize his claim, but there is no need to certify a question because that court has had "'an opportunity to illuminate a clear path on the issue.'" *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003) (quoting *State Farm Mut. Auto Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001)). All of the Illinois Supreme Court's decisions point in the same direction: against the recognition of a claim for retaliatory constructive discharge.

AFFIRMED.