NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 20, 2018
Decided November 6 2018

**Before**

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2950

| | |
|---|---|
| ACUITY, a Mutual Insurance Company,<br>    *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16-cv-3683 |
| KESSOR ENTERPRISES, Ltd., d/b/a Superior Labor Solutions,<br>    *Defendant-Appellant*. | Robert M. Dow, Jr.,<br>*Judge*. |

**O R D E R**

Kessor Enterprises, Ltd., d/b/a Superior Labor Solutions, wants Acuity, its insurance company, to defend it against a third-party complaint seeking indemnity. Acuity believes the situation falls within an exclusion to Kessor's insurance coverage and seeks a declaration that it has no duty to defend Kessor against the third-party claim. Kessor believes an exception to that exclusion applies and claims coverage. In a thorough and persuasive opinion, the district court agreed with Acuity and entered summary judgment on its behalf. We affirm the judgment.

**I.**

Kessor "is an Illinois corporation that supplies union labor to disaster clean-up and repair projects." In 2012, Kessor entered into a contract (the Master Contract) with a company called BMS-Cat, Inc., to provide labor to BMS-Cat's jobsites. Pursuant to this contract, Kessor provided union labor to BMS-Cat's project at the Jones Beach Theater in New York.

On December 4, 2012, Michael Christie, a Kessor employee, allegedly suffered bodily injury while working at the Jones Beach Theater site. In 2013, Christie sued BMS-Cat and Live Nation, the owner of the Jones Beach Theater, alleging negligence and violation of New York labor laws. Christie had already brought and settled a workers' compensation claim against Kessor.

While Christie's suit against Live Nation was pending, Live Nation filed a third-party complaint against Kessor. In the complaint, Live Nation asserts Kessor must indemnify it pursuant to the terms of the Master Contract between Kessor and BMS-Cat. Specifically, Live Nation points to paragraph 4.1 of the Master Contract, which provides:

> To the fullest extent permitted by law, [Kessor] shall indemnify and hold harmless BMS-CAT, the customer with whom BMS-CAT contracts for the Project, and/or the owner(s) of the property at which the Project is located, and its and their respective agents and employees, from and against all claims, actions, liabilities, losses, costs, damages, and expenses (including attorneys' fees and costs) sustained or incurred by reason of any act, omission negligence, or fault by [Kessor], or its agents and employees, or otherwise arising out of or in any manner related to the Services, the Work, or the performance by [Kessor] under the Contract.[1]

Kessor contacted its insurance carrier, Acuity, asserting Live Nation's claim fell within the coverage provisions of its Commercial General Liability (CGL) policy. That policy covered "those sums that the insured becomes legally obligated to pay as damages because of *bodily injury*." The CGL policy further provided that Acuity "will have the right and duty to defend the insured against any *suit* seeking those damages."

---

[1] The Master Contract defines "the Services" as Kessor's provision of union labor and "the Work" as "the work for which Kessor has been asked to provide its Services."

Kessor believed Acuity owed it indemnity for any damages and a duty to defend because Live Nation was seeking damages arising from Christie's alleged bodily injury.

Acuity disagreed, maintaining the situation fell within either the policy's "Contractual Liability" exclusion or the policy's "Employer's Liability" exclusion (or both). Acuity filed this suit seeking declaratory judgment that it owed no duty to defend Kessor from Live Nation's third-party complaint. Kessor responded by arguing the situation fell within exceptions to the exclusions. On cross-motions for summary judgment, the district court held in favor of Acuity, concluding the Employer's Liability exclusion applied. Kessor appeals.

## II.

The district court held Acuity was not required to indemnify Kessor or defend it against Live Nation because the Employer's Liability exclusion took the situation out of the policy's coverage. Having performed our own *de novo* review applying Illinois law,[2] we agree. *See State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017) (performing *de novo* review in a case involving "cross-motions for summary judgment with no disputed facts").

The CGL policy's Employer's Liability exclusion applies to damages arising from "*bodily injury* to: (1) An employee of the insured out of and in the course of (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." Because Christie allegedly suffered bodily injury in the course of his employment with Kessor, both parties acknowledge that, on its face, this exclusion applies.

The parties disagree, however, on whether the sole exception to this exclusion applies. That exception retains coverage for "liability assumed by the insured under an *insured contract*." The CGL policy defines an "insured contract" as, *inter alia*, "[t]hat part of any other contract or agreement pertaining to [Kessor's] business…under which [Kessor] assume[s] the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization." The policy defines "[t]ort liability" as "a liability that would be imposed by law in the absence of any contract or agreement." The Illinois Supreme Court has interpreted similar language as requiring the insured to

---

[2] Neither party disputes that the law of Illinois, where Kessor maintains its principal place of business, applies to the interpretation of the CGL policy. *See generally U.S. Fire Ins. Co. v. Beltmann N. Am. Co.*, 883 F.2d 564, 566 (7th Cir. 1989) ("Illinois is the forum state and its choice of law directs a court to turn to the state where the policy was issued for its interpretation, unless such an interpretation would upset Illinois public policy.").

have assumed the liability of a third party for the third party's own negligence. *See Va. Sur. Co. v. N. Ins. Co. of N.Y.*, 866 N.E.2d 149, 158–59 (Ill. 2007).

In this case, Kessor's potential liability to Live Nation is premised on the indemnity provision of the Master Contract. Therefore, we must decide whether that provision of the Master Contract is an "insured contract," that is, whether the Master Contract caused Kessor to assume Live Nation's liability for Live Nation's own negligence.

The Master Contract contains a choice-of-law clause directing that it "be construed under and governed by the substantive laws of the State of Texas." As "Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy," *see Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004), we apply Texas law to our analysis of the Master Contract.

Texas considers "indemnification of a party for its own negligence" to be "an extraordinary shifting of risk." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). For this reason, Texas law employs "the express negligence doctrine," which requires "parties seeking to indemnify the indemnitee from the consequences of its own negligence [to] express that intent in specific terms." *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987).

Kessor argues the Master Contract satisfies this test. It cites the following language from the Master Contract's indemnity provision: "To the fullest extent permitted by law, [Kessor] shall indemnify and hold harmless [Live Nation]…against all claims…*otherwise arising out of or in any manner related to the Services, the Work, or the performance by [Kessor] under the Contract.*"[3] Kessor maintains the italicized language clearly and expressly encompasses the parties' intent that Kessor would indemnify Live Nation for Live Nation's own negligence related to Kessor's work. The decisions of the Texas Supreme Court compel us to disagree.

For example, in *Gulf Coast Masonry, Inc. v. Owens-Illinois, Inc.*, 739 S.W.2d 239, 239 (Tex. 1987), Gulf Coast, a contractor, had entered into an indemnity agreement with Owens-Illinois, the owner of the property. That agreement provided that Gulf Coast would indemnify Owens-Illinois for any property damage or personal injury "*arising out of or in any way connected with or attributable to the performance or non-performance of work here under by [Gulf Coast]…or by any act or omission of [Gulf Coast]…while on* [Owens-Illinois's] premises." *Id.* (emphasis added). The Texas Supreme Court held that

---

[3] Emphasis added.

language, including the "arising out of or in any way connected with or attributable to" language, did not satisfy the express negligence test. *Id.* at 240 (reversing court of appeals).

The supreme court did find sufficient language in *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W. 2d 724 (Tex. 1989). In that case, the contract read, "[Contractor] agrees to…indemnify…[Owner]…in any matter arising from the work performed hereunder, including but not limited to *any negligent act or omission of [Owner]*." *Id.* at 726 (ellipses in original). The court held "the language 'any negligent act of [Owner]' is sufficient to define the parties' intent." *Id.*; *see also Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 56–57 (Tex. 1991) (holding provision calling for indemnity "without limit and without regard to the cause or causes thereof or the negligence of any party or parties" satisfies "the requirement of Texas law that the indemnity agreement be express").

The situation here is closer to *Gulf Coast* than it is to *Atlantic Richfield*. Unlike the contract in *Atlantic Richfield*, the Master Contract contains no explicit assumption of liability for a third-party's negligence. Accordingly, we conclude the Master Contract does not, under Texas law, oblige Kessor to indemnify Live Nation for Live Nation's own negligence.

Kessor contends this conclusion goes to the merits of Live Nation's contractual indemnity claim and does not obviate Acuity's duty to defend Kessor from Live Nation. *See Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement*, 741 N.E.2d 253, 254 (Ill. 2000) ("[T]he insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent."). But a duty to defend only arises "[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). In this case, given the terms of the CGL policy and the operation of Texas law, Live Nation's contractual indemnity claim cannot possibly fall within the policy's coverage. This is because Texas treats the express negligence doctrine "not [as] an affirmative defense but a rule of contract interpretation." *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). Therefore, "indemnity provisions that do not clearly provide for indemnification for the indemnitee's own negligence do not, as a matter of law, indemnify the indemnitee for its own negligence." *Id.* at 814–15. Because the Master Contract does not "clearly provide" for Kessor to indemnify Live Nation for its own negligence, and given that interpretation of an insurance policy is itself a question of law in Illinois, *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009), the indemnity provision of the Master Contract, *as a matter of law*, is not an insured contract within the

meaning of the CGL policy. Consequently, it is not possible for Live Nation's claim to fall within the policy's coverage, and Acuity owes no duty to defend.

### III.

As we agree with the district court's conclusion that the Employer's Liability exclusion removes Live Nation's claim from coverage under the CGL policy, we AFFIRM.